torney are open to the possible objection suggested by the court of appeals in Gridley v. College, 137 N. Y. 330, 33 N. E. 321, in which case the court says:

"We do not deem it important now to determine whether the proceedings would be absolutely void and a nullity if no notice whatever had been given to the idiot of any of the proceedings instituted.  *  *  *  They would have been invalid undoubtedly in the sense that they would have been set aside as irregular upon the application of any person who had a right to be heard."

Finally, the petitioner and resigning committeeman is, it appears from the papers, the member of the committee who furnished its large bond, and who, therefore, is most interested in the settlement of the committee's accounts, and the court should not deny him the right to institute by a new attorney, of whose ability and character he is satisfied, proceedings in strict conformity with the statute, in place of former irregular proceedings, and unauthorized new application by an attorney in whom he has lost confidence, and whom he has fully paid for his former services. It will be noticed that none of the parties impeached the accuracy of the account filed by the committee, and that the accounting is desired by all. It would be improper for the court to restrain the original attorney from all further participation in the proceedings, since he has the express authorization of two of the committee to continue to represent them. For the above reasons the former proceedings before the referee should be discontinued, vacated, and set aside; the application by the resigning committeeman made upon the notice of motion dated April 9, 1900, and proof of service thereof, and upon his petition verified April 9, 1900, should be and is granted by the appointment of Thomas Allison, Esq., as referee, to take and state the account of the committee, and by the appointment of Stephen H. Keating, Esq., as special guardian of the incompetent; and the original attorney is stayed from prosecuting the original proceedings and the amendatory application. All other motions are denied. At the hearing before the referee the petitioning committeeman may appear by his new attorney, and the other committeemen by their attorney, and it will be the duty of the referee and of the special guardian to see, according to the proceedings on the reference, whether or not the cost of the many controversies in this proceeding, and of the legal services rendered therein, should be borne by the estate of the incompetent, or the committeemen personally.

Ordered accordingly.

---

(52 App. Div. 163.)

HOUSE v. EASTERN BUILDING & LOAN ASS'N.

(Supreme Court, Appellate Division, Fourth Department. May 22, 1900.)

1. BUILDING AND LOAN ASSOCIATIONS—WITHDRAWAL OF MEMBER.
   The by-laws of a building association provided that the association should have 60 days after the filing of the proof of a claim and the approval thereof by the board of directors in which to pay the sum, and that the provision applied to a claim maturing by death as well as to maturity of the stock. Held, that where plaintiff, desiring to withdraw from the association, presented his certificate of stock to the association, and demanded payment of the amount due him, the association was not en-

titled to 60 days to make the payment, since the provision did not refer to payment on a withdrawal, but to a claim maturing by death or maturity of the stock.

**2. SAME—AMOUNT DUE ON CERTIFICATE OF SHARE.**

Articles of incorporation of a building association provided for the withdrawal of stock before maturity if the members wished to do so, but provided that shares which were not pledged might be withdrawn before maturity, with such additional interest, if any, as the by-laws might provide, except that the same should not exceed the net earnings of the stock. Plaintiff's certificate of a share in the association recited that, in case the holder, at any time before maturity of the stock, desired to withdraw from the association, he should receive the amount paid for the certificate, with dividends at the rate of 6 per cent. Defendant demanded the amount paid, together with 6 per cent. interest on his investment. *Held*, that plaintiff was bound by the articles of incorporation, and could not recover 6 per cent., where the interest earned by the stock did not amount to that much.

**3. SAME—PROVISIONS OF INCORPORATING ACT.**

The articles of incorporation of a building association provided that in no event should the corporation be required to pay to withdrawing members more than one-half of the net receipts of the monthly installments paid in during the month in which the withdrawal occurred. Another section declared that any shareholder wishing to withdraw his stock might be allowed to do so at any time. The certificate contained an agreement to pay $200 on maturity to plaintiff in consideration, among other things, of his agreement to abide by all the terms, conditions, and by-laws of the association, and recited that it was "further agreed" that he might withdraw his stock before maturity, and receive the amount paid for it, together with dividends at the rate of 6 per cent. *Held*, that the second clause of the certificate should be construed together with the first, and controlled by the first, and hence, where, during the month of plaintiff's demand for the withdrawal, the receipts of the association were insufficient to allow the association to pay the amount paid by the plaintiff, together with dividends, he could not recover such amount.

Appeal from special term, Oswego county.

Action by Abraham W. House against the Eastern Building & Loan Association. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

The following is the opinion of the special term (HISCOCK, J.):

This action is brought to recover $100 paid by plaintiff to defendant upon two shares of stock issued by it to him November 1, 1892, together with "dividends at the rate of 6 per cent. per annum" down to June 19, 1899, less certain small sums for expenses, which it is conceded it was entitled to deduct. Plaintiff bases his action upon a clause in the certificate of shares issued to him which provided that, in case he at any time before maturity of said stock desired to withdraw from the association, he should receive the full amount paid for the certificate, with dividends at the rate of 6 per cent. per annum. The defendant is an ordinary building and loan association. The stock issued to plaintiff was what was known as "paid-up stock." He was not to pay anything more upon it, but the balance of $100 of the par value, over and above what he paid, was to be made up from the accumulation of profits thereon. Desiring to withdraw before the stock matured, he made a demand upon the company for the sum for which he now sues. What took place upon that demand being made is covered by a stipulation in the case, and it is to the effect that the attorney went to the defendant's office, and "then and there offered to surrender the certificate in this case upon the payment of the amount of capital invested, to wit, $100, together with dividends upon the same from the 1st day of November, 1892, at the rate of six per cent., which he stated was provided for upon the face of the certificate, but would allow the association to deduct the expense element, as provided for in the second paragraph of the terms and conditions printed on the back of the certificate.

His offer to surrender the certificate upon the above condition was rejected, and he was informed that payment would be made in accordance with the terms of the articles of incorporation and the by-laws, if the said certificate was surrendered for withdrawal; that said certificate had not earned the amount which the plaintiff's attorney demanded, and for that reason he (the defendant's officer) refused to pay it." Three defenses are urged by the defendant, which I shall consider: First, that neither at the time of the alleged demand or proof of claim on the defendant, nor at any time since, has the defendant had any moneys in its treasury applicable, under its articles of incorporation and by-laws, to the payment of the plaintiff's shares; second, that the payment of dividends at 6 per cent., as demanded by plaintiff, would exceed the net earnings of the shares of stock in question, said earnings having amounted to but 4 per cent.; third, that the defendant association, under its by-laws, was entitled to 60 days after demand or filing of proof of claim in which to pay, and that this action, having been commenced on the very day of the demand, was prematurely brought.

I will consider these defenses in the inverse order of their above statement. Assuming for the present that the plaintiff is bound by defendant's by-laws in operation at the time when this certificate was issued to him, I do not think that they sustain this last defense. Section 17 of them provides: "The association shall have sixty days after the filing of the proof of a claim and the approval thereof by the board of directors in which to pay the same, and this applies to claims maturing by death as well as to maturity of stock." As stated above, plaintiff bases his action upon his election to withdraw the sum paid by him to defendant for its shares before maturity thereof, as it is provided in the certificate issued to him he may do. The clause just quoted, and upon which defendant relies to sustain the defense now being considered, is, by its terms, made applicable to claims based upon death and upon maturity of stock, and is not applicable to plaintiff's case.

I think the second defense stated is sustained. Plaintiff did not give any evidence to show that his shares of stock had earned 6 per cent. dividends from the date they were issued to him. Upon the other hand, evidence was given by defendant to the effect that they had earned only about 4 per cent., and this, upon the trial, was assumed to be the fact. If plaintiff is subject to and bound by defendant's articles of incorporation and by-laws,—as I think he is,—he is certainly limited, upon withdrawal of his stock, to its net earnings. Article 12 of defendant's articles of incorporation provides for the withdrawal of stock before maturity, as plaintiff is seeking to do, but it places a limitation upon the amount of interest or dividends to be paid upon such withdrawal, as follows: "Shares which are not pledged may be withdrawn before maturity, * * * with such additional interest, if any, as the by-laws may provide, except that the same shall not exceed the net earnings of said stock." Independent, however, of express provisions by the defendant, I have no doubt that the general principles of law cover this subject, and limit plaintiff's right to income upon his stock to its earnings. The clause in his certificate upon which he relies herein provides that upon withdrawal before maturity he shall receive the full amount paid for his certificate, "with dividends at the rate of 6 per cent. per annum." It will thus be noted that the obligation of the company, when narrowly tested by this clause alone, is not to pay a certain sum with a fixed rate of interest, but with a certain rate of dividend. It does not seem necessary to urge or reason at length that this language assured the plaintiff as a stockholder in defendant the earnings upon his stock up to a certain per cent.; that thereby defendant did not, and could not if it would, guaranty that such earnings should reach a certain figure; that if, as matter of fact, the earnings subject to a division upon this stock only reached 4 per cent., that would be the limit of plaintiff's rights; that defendant was not bound to pay, but by various principles of law and statutory provisions was prohibited from paying, to plaintiff upon his stock dividends at a greater rate than it earned. Plaintiff's only demand for payment of and offer to surrender his shares made it an essential condition that he should receive an amount equal to dividends at the rate of 6 per cent. The point was expressly raised by the defendant that his stock had not earned and was not entitled to it. His demand and offer were not a sufficient basis for this action.

I pass to the consideration of the third defense. Upon June 19, 1899, when plaintiff presented his certificate, and attempted to withdraw his moneys from defendant, there had been presented for similar withdrawal stock to the amount of $421,829.46, and there was on hand applicable to the payment of withdrawals only $1,800. During the month of June prior to plaintiff's demand there had been presented for withdrawal stock aggregating $3,023.10, and there had been received as applicable to the payment of such withdrawals but $2,257.76. So that, if defendant is entitled to limit its payment of attempted withdrawals to the amounts received from its members (its only source of income), and in the order in which applications are made for withdrawal, plaintiff was not entitled to receive his money when he commenced his action. And this, upon the figures given, would be so even should the proposed withdrawals and receipts of each month be considered by themselves. If plaintiff is bound by defendant's rules and regulations in force at the time he took out his certificate, he is limited to payment upon withdrawal in the manner claimed. Article 12 of the articles of incorporation provides: "In no event shall the association be required to pay to withdrawing members more than one-half of the net receipts of the monthly installments paid in during the month in which the withdrawals occur." Section 19 of article 14 of the by-laws provides: "Any shareholder wishing to withdraw his stock may be allowed to do so at any time, but the association shall not be required to pay out more than one-half of the net receipts of the monthly installments paid in that month to withdrawing members." After plaintiff purchased his stock, another by-law was passed, which is urged upon my attention in this connection. It reads: "Payments shall be made in the order of the applications for withdrawal, but the association shall not be required to pay out on withdrawing or matured stock more than one-half the amount received from dues and stock payments in any month." I do not regard this provision as materially affecting this case. If the other provisions already quoted apply, I think the rule should be, independent of express provision to that effect, that, if the funds on hand applicable to the payment of withdrawals were insufficient to pay them all, they should be applied to payment in the order in which applications for withdrawal were made. So far as the latter part of the last provision is concerned, it is broader in plaintiff's favor as to the funds from which withdrawals may be paid than those in force when he joined the company. Plaintiff denies that he is bound by the provisions quoted. In his application for shares he says: "I hereby agree to abide by all the terms, conditions, and by-laws contained or referred to in the certificate of shares, and will also comply with all the rules and regulations of said association." The certificate of shares issued to him recited that the agreements therein made by the company are so made in consideration of the moneys paid by plaintiff to it, and also of "agreements and statements contained in the application for membership, * * * together with full compliance with the terms, conditions, and by-laws of this corporation." I do not understand that the plaintiff claims that his certificate of shares was generally free from and superior to the restrictions of the articles of incorporation and by-laws now relied upon by defendant. But he insists that the clause in it relating to the right to withdraw, and payment thereupon, standing by itself, is an absolute and unconditional promise, and free from the qualifications urged by defendant. It seems to me, however, that this is too narrow and restricted a construction. The certificate on its face starts out with an agreement to pay $200 upon maturity, etc., to plaintiff, in consideration of his agreement (in effect) to abide by all the terms, conditions, and by-laws of the association. Then right along, in continuation of this agreement, "it is further agreed" that he may withdraw his stock before maturity, and receive the amount paid for it, etc. No question is made but that the first clause of the agreement is subject to the provisions urged by defendant, and it seems to me that it would be a very strained interpretation to hold that the second clause, relied upon by plaintiff, is to be considered entirely by itself, and independent of all the other provisions of the certificate. Resorting to pretty narrow rules of construction, the word "further" in "it is further agreed" naturally implies a continuation of the preceding agreements, and subject to the same conditions. But, viewing it from another standpoint, this was a mutual association. Plaintiff, under the terms of his application for

and certificate of stock, is to be charged with notice and knowledge of the provisions of the articles of association and by-laws. They both told him that the company could not be compelled to pay withdrawing members except from certain funds. These or some similar provisions were quite essential for the protection of all the members of the company. As said by Judge Andrews in a case against a similar association: "It was essential to the practical working of the scheme and purpose of the organization. The association, if the plan was followed, could have no assets of any considerable amount available for immediate repayment of dues paid in by withdrawing members. It was not a moneyed corporation in any proper sense, and would not, in the ordinary course of its business, have assets readily convertible into money. Its assets would be represented in the main by loans to members on mortgages, payable in small weekly payments. If no restriction existed preventing withdrawing members from immediately maintaining actions to recover their dues and enforcing judgments obtained, it is evident that this and similar associations would have a precarious existence. They would be in peril at almost any moment to have their operations arrested, and to be thrown into a receivership, by the conjoint action of a few withdrawing members. The beneficial purpose of the statute for the encouragement of small savings would be frustrated, and the assets of the association subjected to costs and expenses which would seriously impair the general fund contributed by the members." Engelhardt v. Association, 148 N. Y. 281, 285, 42 N. E. 710, 35 L. R. A. 289, 297. Being thus chargeable with knowledge of the general nature and purpose of the association which he was joining, and of its rules and regulations, I think it must be held that when plaintiff took from defendant its agreement to pay him upon withdrawal before maturity a certain sum he took it subject to the qualifications as to method and manner of payment now claimed by it. I do not regard the case of Sinteff v. Association, 37 App. Div. 340, 57 N. Y. Supp. 611, especially relied upon by plaintiff's counsel, as an authority for his claims in this action. That case simply holds that a promise made by such an association, absolute and unconditional, cannot be qualified in important and substantial respects by regulations adopted afterwards. It does not hold that such promise is independent of or superior to the articles of incorporation and by-laws in force at the time of its making. It proceeds upon quite the opposite theory.

Judgment ordered dismissing plaintiff's complaint, with costs.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

O. M. Reilly, for appellant.
Leonard C. Crouch, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of HISCOCK, J., delivered at special term.

---

(32 Misc. Rep. 56.)

### In re RIPSOM & NEWLAND FUR CO.

(Supreme Court, Special Term, New York County. June, 1900.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—ASSIGNEES—MANAGEMENT OF ESTATE—REFERENCE.

Where an assignee delayed in the disposition of the assigned property, and sold much of it in bulk and on credit, contrary to the terms of the assignment, it was incumbent on him, on a taking of his account by a referee, to show by sufficient proof the propriety of his methods.

2. SAME—ACCOUNT OF ASSIGNEE.

Where an assignee delayed the sale of the assigned property, and sold considerable of it in bulk and on credit, contrary to the terms of the assignment, and on the hearing before a referee testified that his conduct was owing to advice of officers of the assignor and other dealers in such property, with whom he had frequently consulted, but did not produce

66 N.Y.S.—8